OPINION OF THE COURT
Ira B. Harkavy, J.
*301 In this reassigned matter,[1] petitioner Ellen M. Silverstein brings this application for a judgment, pursuant to CPLR article 78, vacating and annulling the January 12, 2006 decision of respondent First Deputy Chief Administrative Judge Ann T. Pfau on behalf of respondent New York State Office of Court Administration (OCA) which removed petitioner, effective January 12, 2006, from the list of qualified applicants for fiduciary appointment[2] following an investigation by respondent New York State Office of the Managing Inspector General for Fiduciary Appointments.
Background
This case stems from the referral to OCA’s Inspector General of two Kings County Supreme Court cases in which petitioner acted as a referee to sell. Both cases, NYCTL 1997-1 Trust v Prados, Inc. (Sup Ct, Kings County, Index No. 8771/00) and Mortgage Elec. Registration Sys., Inc. v Agosto (Sup Ct, Kings County, Index No. 37227/01), involved surplus monies proceedings before the Honorable Laura Lee Jacobson, who, in each instance, found that petitioner had awarded herself additional fees for services rendered without court approval and directed petitioner to return the additional fees.[3]
In addition, these fiduciary matters were referred, first to the Honorable Neil Firetog, as Administrative Judge for the Second Judicial District, and then to OCA’s Inspector General. The latter, in turn, referred them for investigation to the Managing Inspector General for Fiduciary Appointments, whose representative initially spoke with petitioner on October 21, 2004 and sent a follow-up letter to her dated that same day. The letter acknowledged the conversation, confirmed that no meeting would occur on October 22, 2004 and stated that the Managing Inspector General’s office “has notified you regarding a complaint that has been filed against you.” The letter also sought a list of cases where petitioner had received referee appointments within the last three years and to reschedule petitioner’s interview at the Managing Inspector General’s office.
*302 Thereafter, Judge Pfau sent a letter, dated November 18, 2004, to petitioner which provided a written statement about the nature of the investigation, identified the cases in question and specified the reasons for petitioner’s potential removal from the list of qualified applicants for fiduciary appointments.[4] Judge Pfau’s letter also urged petitioner to supply the previously requested list of appointments, to reschedule her interview and to submit any information or documentation opposing her removal from the qualified applicants’ list.
Petitioner initially responded by an express mail letter, dated December 1, 2004, which advised that Judge Pfau’s letter provided her first notification about: (a) the specificity of the two complaints; (b) Justice Jacobson’s two orders; and (c) her possible removal from the list of qualified applicants. This December 1, 2004 letter also sought a two-week extension to December 14, 2004 for a further response in view of the delayed arrival of Judge Pfau’s November 18, 2004 letter.[5]
Petitioner thereafter further responded by an express mail letter, dated December 13, 2004, after receiving the requested extension by a December 8, 2004 phone notification, and submitted her appointment list for the prior three years as sought. She also stressed that: (a) she was never served with a notice of claim or notice of motion regarding the surplus monies in the Prados matter; (b) she received the notice of motion regarding the surplus monies in the Agosto matter “after the date said motion was returnable”; and (c) she had never been served with Justice Jacobson’s orders in either case. Petitioner concluded that “[w]ith regard to the fees that I did in fact receive I have never had an opportunity to discuss same and thus welcome such an opportunity.”
*303 Petitioner’s interview with the Managing Inspector General and a court analyst thereafter occurred on January 27, 2005. Arnold Ludwig, Esq., an attorney who petitioner describes as “an acknowledged expert in the field of foreclosure (l)aw and well versed in compliance with Fiduciary appointments and in particular rules for Referees (to sell and compute)” accompanied petitioner at the interview. Petitioner references an affidavit of Mr. Ludwig,[6] in claiming that he explained the referee process after court appointment in response to the Managing Inspector General’s request, and contends that “[fit was further indicated that Petitioner’s alleged fees were not in fact fees at all.” Respondent OCA, on the other hand, through the affidavit of respondent Judge Pfau, asserts that during the interview “petitioner continued to defend her excess fees on the ground that she did not receive Justice Jacobson’s orders for her to return excess compensation.”
Petitioner additionally claims that she received requests at the interview for all available information and documentation regarding the two matters under review. She further contends that she subsequently sent a responsive letter with such documentation for the Managing Inspector General’s consideration and attaches a copy of both a letter, dated February 3, 2005, addressed to the Managing Inspector General, and such documentation to her papers herein. In addition, petitioner claims that she noted the submission of the letter and documentation in a February 14, 2005 voice mail message that she left for the court analyst who appeared at the January 27, 2005 interview. The message also allegedly requested notification when petitioner could anticipate a response to her submission.
Respondents deny receiving the February 3, 2005 letter and documentation and deny petitioner’s claim about her February 14, 2005 follow-up voice mail message. The January 12, 2006 letter from Judge Pfau thereafter informed petitioner of her removal from the list of qualified applicants for appointment as of the date of that letter and her opportunity to apply for reinstatement in two years from the date of removal. The letter explained that “it has been determined that your conduct in NYCTL 1997 v Prados Inc., Index No. 8771/2000 (Kings County) *304 and Mortgage Electronic Registration Systems Inc. v Agosto, Index #37227/2001, as well as your failure to supply the IG with requested documentation, constitutes a basis for such removal.”
The Parties’ Positions
Petitioner’s Position
Petitioner contends that respondents lack both objective standards and a factual basis for the removal determination. She argues that respondents conducted a faulty and incomplete investigation which failed to fully set forth her explanations, failed to consider her February 3, 2005 supplemental letter and documentation and failed to present the January 27, 2005 interview notes or a report for review in this proceeding. Petitioner characterizes respondents as making conclusory statements and failing to present specific, detailed findings of fact regarding the merits of Justice Jacobson’s determinations about petitioner’s actions as a referee. She challenges the notice given and procedures in those surplus monies proceedings as producing a misunderstood or mistaken view of her actions. Petitioner contends that all these alleged deficiencies have generated an arbitrary and capricious action by respondents in removing her name from the qualified applicants’ list for fiduciary appointments.
Respondents’ Position
Respondents assert that a rational basis supported their determination, that petitioner received the appropriate process due her and that their determination should remain undisturbed. They stress that their investigation substantiated that petitioner twice awarded herself fees in excess of the statutory maximum without prior court approval which warranted her removal from the qualified applicants’ list. Consideration of the Managing Inspector General’s investigation, Justice Jacobson’s orders in the underlying fiduciary matters, petitioner’s interview and written correspondence as well as her alleged inability to provide complete records during the investigation, they believe, provide a viable factual basis for the action taken.
In addition, respondents recount that they provided petitioner with written notice of the reasons for her potential removal and that she availed herself of the opportunity to offer an explanation and submit facts in opposition to her removal. Respondents thus assert compliance with the process set forth by the governing rule, 22 NYCRR 36.3 (e).
*305 Discussion
In an article 78 proceeding of this nature, the standard of review is whether respondents acted in an arbitrary and capricious manner in removing petitioner from the list of qualified applicants for fiduciary appointments. (See CPLR 7803 [3]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Matter of Kaplan v Bratton, 249 AD2d 199, 201 [1st Dept 1998]; Matter of Pleickhardt v Lippman, 174 Misc 2d 552, 553 [Sup Ct, Suffolk County 1997].) The arbitrary and capricious standard “ ‘relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact. . . . Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.’ ” (Matter of Lyons v Whitehead, 2 AD3d 638, 640 [2d Dept 2003], quoting Matter of Pell v Board of Educ., supra, 34 NY2d at 231.) Even if a different decision could be reached, a court may not substitute its judgment for that of the governmental agency so long as the decision has a rational basis. (Matter of Kaplan, supra, 249 AD2d at 201; Matter of Pleickhardt, supra, 174 Misc 2d at 553.)
Petitioner’s removal from the list of qualified applicants for fiduciary appointments was neither arbitrary nor capricious. Her removal was based upon her conduct in two fiduciary matters that was “incompatible with appointment.” (See 22 NYCRR 36.3 [e].)
Section 36.3 (e) states as follows:
“The Chief Administrator may remove any person or entity from any list for unsatisfactory performance or any conduct incompatible with appointment from that list, or if disqualified from appointment pursuant to this Part. A person or entity may not be removed except upon receipt of a written statement of reasons for the removal and an opportunity to provide an explanation and to submit facts in opposition to the removal.”
In July of 2004, Justice Laura Jacobson, Kings County Supreme Court, Civil Term, and Kings County Administrative Judge Neil Firetog referred the two subject fiduciary matters concerning petitioner for investigation by OCA’s Inspector General, who referred the matter to the Managing Inspector General. The Managing Inspector General conducted a thorough investigation that substantiated that petitioner awarded herself *306 fees in excess of the statutory maximum, without prior court approval, in those two matters in which she was appointed as a referee. Based upon that investigation, petitioner was removed from the list of qualified applicants for fiduciary appointments, by letter dated January 12, 2006.
Upon review of all the evidence, respondent rationally determined that petitioner should be removed from the list of qualified candidates for fiduciary appointments, with leave to reapply in two years.
Accordingly, based upon the foregoing, the petition is denied and the instant article 78 proceeding is dismissed.

. The Honorable Martin Schneier recused himself from this matter, by-order dated July 7, 2006, necessitating this case’s random reassignment to this part.

. OCA had approved petitioner’s application for inclusion on the list of qualified applicants for appointments in various fiduciary categories on May 4, 2004.

. More specifically, Justice Jacobson directed the return of $1,000 on May 28, 2004 in the Prados case and $950 on July 7, 2004 in the Agosto case.

. Section 36.3 (e) of the Rules of the Chief Judge (22 NYCRR) governed Judge Pfau’s actions. That section provides that
“[t]he Chief Administrator may remove any person or entity from any list for unsatisfactory performance or any conduct incompatible with appointment from that list, or if disqualified from appointment pursuant to this Part. A person or entity may not be removed except upon receipt of a written statement of reasons for the removal and an opportunity to provide an explanation and to submit facts in opposition to the removal.”

. More specifically, the December 1, 2004 letter initially noted that petitioner had sent OCÁ certified mail notification of her change of address on November 3, 2004, which a return receipt shows that OCA thereafter received, but that the November 18, 2004 letter to her still utilized her old address which resulted in its forwarding on November 28, 2004 and its arrival on November 30, 2004.

. Paragraph 22 of petitioner’s reply affirmation states in this regard that “Arnold J. Ludwig, Esq., as Counsel who accompanied Petitioner to the interview (as set forth in his affidavit) was required to explain the complexities of being a referee to the interviewers who did not appear to understand the RPAPL procedural specifics for confirming a Report of Sale.”